<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **HOFFMANN-LA ROCHE, INC.,** <br><br> Plaintiff, <br><br> v. <br><br> **ROXANE LABORATORIES, INC.,** <br><br> Defendant. | **Civil Action No. 09-6335 (WJM)** <br><br><br> <u>**OPINION**</u> |

<u>**FALK, U.S.M.J.**</u>

Before the Court is the motion of Plaintiff Hoffmann La-Roche, Inc. for partial reconsideration of this Court's Opinion and Order dated May 11, 2011, directing the production of documents withheld as privileged. [CM/ECF No. 90.] The motion is opposed. No oral argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, the motion is **denied**.

<u>**BACKGROUND**</u>

A full recitation of the relevant facts and procedural history can be found in the Court's previous Opinion. See <u>Hoffmann-La Roche, Inc. v. Roxane Laboratories, Inc.</u>, No. 09-6335, 2011 WL 1792791 (D.N.J. May 11, 2011); CM/ECF No. 77. Only the most relevant facts are repeated here.

This is a Hatch-Waxman patent action brought by Plaintiff Hoffmann-La Roche, Inc. ("Plaintiff" or "Roche") against Defendant Roxane Laboratories, Inc. ("Defendant" or "Roxane"),

alleging infringement of United States Patent No. 5,472,949 ("the '949 patent"). The '949 patent covers the drug capecitabine, which is used in Roche's breast and colon cancer drug, Xleoda®. This Court has spent considerable time case managing this case and related Xleoda® litigation.[1]

On May 11, 2011, this Court issued an Opinion and Order ("the Opinion") directing the production of 21 documents ("the Disputed Documents") withheld by Plaintiff as privileged.[2] The Disputed Documents belong to a non-party company located in Japan, Chugai Pharmaceuticals, Inc. ("Chugai"). Chugai and Plaintiff Roche are entirely separate companies that have no control over each other's documents and witnesses.[3]

Despite its non-party status, in June 2010, in coordination with Roche and counsel for Roche, Chugai voluntarily produced discovery in this case. Among a larger number of documents produced to Roxane were the 21 Disputed Documents.

In September 2010, Teva Pharmaceuticals, Inc., a defendant in another capecitabine ANDA case that has been consolidated with this one for discovery purposes, noticed (and alerted Roche) that

---

[1] This case is one of four pending in this district involving capecitabine; all four are before District Judge Martini. This particular case is consolidated with another, Hoffmann-La Roche Inc. v. Teva, 09-5283, for discovery purposes.

[2] Prior to the issuance of the Opinion, the dispute had a lengthy history before the Undersigned, which is set forth in the Opinion and is incorporated herein at length. See 2011 WL 1792791, at *2 ("History of the Disputed Documents").

[3] Roche itself has repeatedly and expressly stressed that the two companies are separate entities. See, e.g., 2011 WL 1792791, at *2 (citing Declaration of Darryl H. Steensma, Esq., Ex. 4 ("Plaintiff Hoffmann-La Roche, Inc. has zero ownership interest in Chugai, and therefore, cannot compel Chugai to produce documents."); id., Ex., 5 ("Plaintiff Hoffmann La-Roche, Inc. restates that it has no ownership interest in Chugai and cannot compel Chugai to produce *its* documents" (emphasis added); id., Ex., 7 ("Roche has no control over the named inventors . . . and, therefore, Roche cannot compel them to appear for deposition.")). The only relationship between the companies is that Chugai is partially owned by a subsidiary of Plaintiff Roche's parent company, a Swiss conglomerate Roche Holding Ltd.

the Disputed Documents had been produced only to Roxane. In late November 2010, more than two months after Roche was notified of the production, Roche requested that Roxane return the documents, contending they were privileged and had been inadvertently produced. Chugai did not attempt to intervene in the case to assert privilege in any way.

In briefing on the original motion to compel, Roche offered two alternatives for its supposed standing to assert the attorney-client privilege over Chugai's documents: (1) the "common-interest doctrine"; and/or (2) Roche's contention that, in the corporate context, the "client" for purposes of the privilege extends among and between a parent company and all of its affiliates; *i.e.*, here, beyond Chugai to, apparently, include Roche and all other related Roche entities. See 2011 WL 1792791, at *5 (citing Pl.'s Br. at 19-20.) In turn, Roxane sought production of the Documents on no less than seven grounds, including the threshold argument that Roche lacked standing to assert privilege over Chugai's documents.

On May 11, 2011, this Court issued its Opinion, which held, *inter alia*:

1. Roche lacked standing to assert the privilege over Chugai's 21 documents. In particular, this Court found that the "common-interest doctrine" was inapplicable because the doctrine, as a matter of law, requires the sharing of privileged communications between attorneys, which was absent here, see 2011 WL 1792791, at *4-7 & nn. 4-8 (citing, *inter alia*, In re Teleglobe Commc'ns Group, 493 F.3d 345 (3d Cir. 2007));

2. Even if there was standing, which was lacking, Roche had not carried its burden of showing that Documents 1-6 were privileged communications, see 2011 WL 1792791, at *7-9 & nn. 9-12, and that any privilege had been waived, see id. at *11; and

3. Even if there was standing, any privilege that once attached to Documents 7-21 had been waived through deposition testimony and their production, see 2011 WL 1792791, at *10-11 & n.13.[4]

---

[4] Additional arguments were presented, some of which the Court declined to reach. In particular, Roxane argued that, assuming standing existed, Roche waived any privilege when it produced the documents and waited five months (and at least two full months after it had knowledge of the production) before seeking their return. The Court noted the strength of the argument but

On May 26, 2011, Roche filed the present motion for partial reconsideration of: (1) the applicability of the common-interest doctrine; and (2) the Court's conclusion that Documents 1-6 are not privileged.

### STANDARD OF REVIEW

Motions for reconsideration are governed by Local Civil Rule 7.1(i). Reconsideration is an "extraordinary remedy" and is granted "very sparingly." N.L. Indus. v. Commercial Union Ins. Co., 935 F. Supp. 513, 516 (D.N.J. 1996). Because the burden on the moving party is extremely high, a motion for reconsideration will be granted only if: "(1) an intervening change in controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or fact, or prevent manifest injustice." Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F. Supp. 1216, 1220 (D.N.J. 1993); see also Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). Local Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the Court before the original decision was rendered. See Bermingham v. Sony Corp. of Am., Inc., 820 F. Supp. 834, 856 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994). In other words, a motion for reconsideration is not an mechanism to "ask the Court to rethink what it ha[s] already thought through." Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 744 F. Supp. 1311, 1314 (D.N.J. 1990). A court "must deny a motion that simply 'rehashes the claims already considered.'" Eye Laser Care Center, LLC v. MDTV Med. News Now, Inc., No. 07-4788, 2010 WL 2342579, at *1 (D.N.J. June 7, 2010) (quoting Russell v. Levi, No. 06-2643, 2006 WL 2355476, at *2 (D.N.J. Aug. 15, 2006)).

---

declined to rule both because it was unnecessary and because Roche had failed to brief the issue. See id. at *12. The Court also noted that its decisions were made not only as a matter of law but also as a matter of fundamental fairness, and that it "deliberately took another step to make sure that the decision was fair and appropriate in the context of this case" by endeavoring "to step back from the esoteric points of law cited herein and observe the big picture," id., including the fact that Roxane had use of the documents for five months. See id.

## ANALYSIS

### A. Standing

In the initial motion, Roche argued that the common-interest doctrine provided it with standing to assert privilege over non-party Chugai's documents. The argument was rejected because, as explained by the Third Circuit in In re Teleglobe Commc'ns Corp., 493 F.3d 345 (3d Cir. 2007), the doctrine requires the sharing of privileged communications between attorneys representing separate clients, and here, the Disputed Documents did not involve at least two attorneys. See 2011 WL 1792791, at *4-7 & nn. 4-8. Nevertheless, Roche contends, despite the continued absence of a second attorney, that the Court should reconsider its decision because Roxane allegedly admitted, "in connection with its motion to dismiss the Complaint due to lack of standing," that Roche and various Roche-related entities shared a common interest in the '949 patent through operation of various assignment agreements. (Pl.'s Br. 1, 3, 5-6.) Roche's argument is meritless.

The common-interest doctrine allows "*attorneys representing different clients* with similar legal interests to share information without having to disclose it to others." In re Teleglobe Commc'ns Corp., 493 F.3d 345, 364 (3d Cir. 2007) (emphasis added). The doctrine has two essential requirements: (1) that privileged communications be shared *between attorneys*; and (2) that the sharing attorneys represent separate parties with a common legal interest in the shared communication. See id. at 364. The attorney-sharing requirement is "black-letter law." Id. at 372.

Roxane's supposed concession of a common legal interest among Roche and others relating to the '949 patent has nothing whatsoever to do with the presence of a second attorney or the Court's actual Opinion. If anything, Roche's argument and Roxane's phantom admission go to the *second* of the doctrine's requirements -- *i.e.*, whether Roche and Chugai had a sufficiently common legal interest in the shared communications. The *first* requirement, the attorney-sharing requirement, is what this Court's Opinion was based upon and what Teleglobe requires. See 2011 WL 1792791,

5

at *5-8. Roche's argument and Roxane's alleged admission have nothing to do with the Court's Opinion and provide no basis for reconsideration. Thus, Roche's argument fails.[5]

### B. Documents 1-6[6]

Roche also seeks reconsideration of the Court's conclusion that Documents 1-6 are not privileged. Roche argues the decision was incorrect because the Court allegedly failed to account for the fact that Roche's corporate procedures and protocols contain what amounts to a standing, implied request for legal advice that would somehow invest with privilege communications that do not involve a licensed attorney. (Pl.'s Br. 5-7.)

The Court did not overlook or fail to appreciate Roche's argument in reaching its decision. Rather, Roche's expansive and strained theory of attorney-client privilege was known, addressed at

---

[5] Roche quietly attempts to blur the line between the "joint-client (or co-client) doctrine" and the "common-interest doctrine" by attempting to refer to the two doctrines interchangeably. (Pl.'s Br. 1, 4.) This is plainly improper. The doctrines are entirely distinct, which was made abundantly clear in Teleglobe (a case which Roche's own expert cited in his declaration) and this Court's Opinion. See 2011 WL 1792791, at *6 n.7. Indeed, this Court has made clear that Roche failed to effectively argue the joint-client doctrine and made the decision to rely exclusively on the common interest doctrine. See id. Roche cannot shift its argument on reconsideration. See, e.g., Bowers v. Nat'l Collegiate Athletic Assoc., 130 F. Supp. 2d 610, 613 (D.N.J. 2001); see also Lithuanian Commerce Corp. v. Sara Lee Hosiery, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing Haines v. Liggett Group, Inc., 975 F.2d 81, 92 (3d Cir. 1992)); Kennedy Indus., Inc. v. Aparo, No. 04-5967, 2006 U.S. Dist. LEXIS 46075, at *1 (E.D. Pa. July 6, 2006) ("A litigant that fails in its first attempt to persuade a court to adopt its position may not use a motion for reconsideration either to attempt a new approach or correct mistakes it made in its previous one."). Thus, to the extent Roche now attempts to raise the joint-client doctrine, the effort is rejected.

Moreover, even if Roche could entirely abandon its prior argument, which it cannot, it would make no difference. The joint-client doctrine refers to a single attorney representing multiple clients in a matter of common interest. See Teleglobe, 493 F.3d at 362. Here, however, Documents 1-6 do not involve *any* attorney. Indeed, Mr. Silverman, the only attorney Roche has ever offered in this case, was not employed by Roche until *after* Documents 1-6 were created. Additionally, the existence of a joint-client relationship requires more than the mere representation of multiple clients with related interests, including examination of "the understanding of the parties and the lawyer in light of the circumstances." Id. Here, with respect to Documents 1-6, it is impossible to examine the "understanding" of "the lawyer" because there is none involved.

[6] As the Court has reaffirmed that Roche lacks standing to assert the privilege, this section is essentially unnecessary.

6

length, and rejected. See 2011 WL 1792791, at *7-9 & nn. 11-12. Roche presents no binding precedent that this Court overlooked, choosing instead to simply re-hash the same arguments that have already been made and dispensed with. Simple disagreement with the Court's decision is not a basis for reconsideration. See Eye Laser Care Center, 2010 WL 2342579, at *1.[7]

## CONCLUSION

For the above stated reasons, Plaintiff's motion for reconsideration is **denied**. The withheld documents shall be produced within **seven calendar (7) days**. An appropriate Order will be entered.

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**Dated: June 16, 2011**

---

[7] To the extent Roche suggests this Court failed to realize that a request for legal advice can be implied (Pl.'s Br. 8), it is mistaken. The Court is well aware that a request for legal advice can be implied. See, e.g., Edna Selan Epstein, *The Attorney-Client Privilege and the Work Product Doctrine*, at 329-30 (5th ed. 2007) (collecting cases). However, even an implied request for legal advice *has to be made to a lawyer* (or a lawyer's subordinate). Mr. Silverman, the only licensed attorney Roche proffers, was *not employed by Roche* at the time Documents 1-6 were created. Thus, absent the involvement of an attorney, no request for legal advice -- implied or direct -- occurred. The cases cited by Roche do not hold different. See, e.g., In re Pfizer, Inc. Sec. Litig., No. 90-1260, 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23 1993) ("An implied request exists when an employee sends information to *corporate counsel* in order to keep them apprised of ongoing business developments, with the expectation that the attorney will respond in the event that the matter raises important legal issues." (emphasis added)); Hercules, Inc. v. Exxon Corp., 434 F. Supp. 2d 136, 144-45 (D. Del. 1977).